UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE L. BURGESS, <br><br>　　　　Plaintiff, <br><br>　vs. <br><br>J. RAYA, et al., <br><br>　　　　Defendants. | Case No. 1:11-cv-00921-LJO-JLT <br><br> ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND <br><br> (Doc. 1.) |

Plaintiff Dwayne L. Burgess ("Plaintiff") is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Before the Court for screening is Plaintiff's original complaint, filed on December 22, 2009 with the California Superior Court in Kern County and filed with this Court on June 6, 2011. (Doc. 1.) In his complaint, Plaintiff asserts claims against Correctional Officers J. Raya, J. Garcia, E. Polanco, J. Fernandez, and P. Morales, as well as Nurse Robaina, Counselor D. Tarnoff, and E. Rodriguez (collectively, "Defendants"), all employed at the Kern Valley State Prison. (Doc. 1 at 18.)

**I.　Screening Requirement**

Because Plaintiff is seeking redress from governmental employees in a civil action, the Court is required to screen his complaint in order to identify cognizable claims. 28 U.S.C. § 1915A(a)-(b). The Court shall "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. Pleading Standards

"Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). "[They] can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id.

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a). Each allegation must be simple, concise, and direct. Fed. R. Civ. P. 8(d)(1). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted).

In analyzing a pleading, the Court should set conclusory factual allegations aside, accept all non-conclusory factual allegations as true, and determine whether those non-conclusory factual allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-52 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." Id. at 1950.

## III. 42 U.S.C § 1983 Claims

Title 42, § 1983 of the United States Code provides a cause of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .

42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254-57 (1978)).  It does not provide any substantive rights, but rather "authorizes a cause of action based on the deprivation of civil rights guaranteed by other Acts of Congress." Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979).

A plaintiff stating a claim under § 1983 must allege facts showing he was deprived of a federal right by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  For a defendant to be liable under § 1983, a plaintiff must prove there is an affirmative link between the alleged deprivation and the resulting injury.  See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).  An affirmative link exists when a defendant "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Under § 1983, Plaintiff is required to show that (1) each defendant acted color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Humphrey v. Yates, 2009 U.S. Dist. LEXIS 100252, 8-9 (E.D. Cal. Oct. 27, 2009) (citing Long, 442 F.3d at 1185).

### IV.     Plaintiff's Factual Allegations and Contentions

Plaintiff is a state prisoner who was incarcerated at Kern Valley State Prison ("KVSP") at the time of the events in question.[1]  (Doc. 1 at 18.)  Plaintiff alleges the following:

During the morning of October 27, 2008, Plaintiff and 43 other inmates were excused from "chow" and massed in the rotunda of Building 4 while their cells were searched in violation of prison security standards and the rotunda's maximum capacity.  (Doc. 1 at 18.)  After the

---

[1] While Plaintiff gives the date of the inciting incident as October 27, 2009, all subsequent events are alleged to have occurred in late 2008 and early 2009.  The Court proceeds under the assumption the inciting incident took place on October 27, 2008.

3

conclusion of the cell searches, Defendants Raya and Garcia ordered all inmates to return to their cells. (Doc. 1 at 19.) The inmates refused to comply, instead asking for a superior officer to witness the alleged breach of inmate safety caused by Raya and Garcia's actions in assembling such a large number of inmates in the rotunda. (Doc. 1 at 19.) After several minutes, defendant Polanco dropped a canister of pepper spray into the rotunda. (Doc. 1 at 19.) The inmates were individually removed approximately twelve to fifteen minutes after the release of the pepper spray. (Doc. 1 at 20.) Plaintiff was informed later that two inmate-manufactured weapons had been found in the rotunda after the incident. (Doc. 1 at 20.) As a result of his exposure to the pepper spray, Plaintiff suffered burning sensations in his chest, coughing, and shortness of breath, as well as emotional injury stemming from the possibility of becoming a victim of vicious assault by other inmates. (Doc. 1 at 19-20.)

On the night following the incident, Plaintiff was interviewed by a nurse who inquired about any injuries he may have sustained, but Plaintiff failed to comment due to safety concerns about retaliatory acts. (Doc. 1 at 20.) Approximately one week later, Plaintiff was examined by defendant Robaina, at which time he asked to see a doctor regarding his symptoms. (Doc. 1 at 20.) Defendant unsuccessfully requested to see a doctor two more times, and was informed that defendant Rodriguez was responsible for scheduling inmate doctor appointments, and that Rodriguez would schedule him for the next available appointment. Plaintiff was later seen, for different health issues, by a Dr. Dileo on December 17, 2008. (Doc. 1 at 21.)

Around November 8, 2008, Plaintiff received notification of a rules violation citation for participation in an unlawful assembly on October 27. (Doc. 1 at 20.) Plaintiff was later found guilty of the violation by a preponderance of the evidence on November 13, without being offered an opportunity to call witnesses or submit a statement. (Doc. 1 at 21.) Plaintiff contends that this finding was made in error as he was forced to assemble in the rotunda against his will, and that his punishment of a loss of privileges for ninety days was excessive. (Doc. 1 at 21-22.) Furthermore, Plaintiff's contends that his appeals, filed on December 30, 2008, and March 11, 2009, were inappropriately denied by defendant Tarnoff in a deliberate effort to thwart Plaintiff's right to redress. (Doc. 1 at 22.) Plaintiff then sent a letter of appeal to the Inmate Appeals Branch

in Sacramento, but was sent notice on May 15, 2009, that his appeal had been forwarded for further action to Tarnoff, who claimed it was never returned. (Doc. 1 at 23.)

**V.      Discussion**

   **A.      First Amendment Claim – Failure to Respond to Grievance**

Plaintiff alleges a violation of his First Amendment right to petition the government for redress of grievances without retaliation. Allegations of retaliation against a prisoner's exercise of First Amendment rights to freedom speech or to petition the government for redress may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Rhodes regarding elements of retaliation in prison context).

Plaintiff's allegations that defendants Morales or Tarnoff improperly denied his inmate complaints are insufficient to demonstrate a constitutional violation. In the Ninth Circuit it is well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Therefore, when a prison official denies, screens-out, or ignores an inmate's grievance, the prison official does not deprive the inmate of any constitutional right. See, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788, at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK EFB P, 2009 WL

4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials screened-out his inmate grievances without any basis failed to show a deprivation of federal rights). Accordingly, allegations by Plaintiff against Defendants for violating his right to redress by failing to respond to his grievances fail to state a cognizable claim.

### B. Eighth Amendment Claims

#### 1. Cruel and Unusual Punishment

The Eighth Amendment "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1976)). It prohibits the "unnecessary and wanton infliction of pain," including sanctions that are "so totally without penological justification that it results in the gratuitous infliction of suffering." Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). However, the Eighth Amendment does not require that a prison be comfortable; the requirement is only that prison officials maintain conditions that are humane. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Accordingly, a prison is not required to provide every amenity desired but must only provide for basic human needs, including proper "food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit, 682 F.2d at 1246 (citations omitted).

Eighth Amendment claims have both an objective and subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To properly allege a claim, a prisoner need allege (1) that the conditions of his imprisonment objectively posed a "substantial risk of serious harm" depriving him of basic necessities and (2) that prison officials subjectively acted with "deliberate indifference" to his health or safety. Farmer, 511 U.S. at 834.

The proper inquiry for Eighth Amendment claims in the context of excessive force is whether the use of force was made in good-faith to "to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Any malicious or sadistic use of force to cause harm will always violate contemporary standards of decency. Id. at 9. Accordingly, the objective component of an Eighth Amendment claim does not require Plaintiff to allege significant injury as a result of excessive force. Id.

Plaintiff contends that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff alleges that Defendants maliciously subjected him to pepper spray for twelve to fifteen minutes, which caused him to suffer burning sensations in his chest, coughing, and shortness of breath following the incident. If this use of pepper spray reflects a "deliberate or conscious choice to follow a course of action from among various alternatives, it may lead to liability under the Eighth Amendment. <u>Clement v. Gomez</u>, 298 F.3d 898, 905 (9th Cir. 2002) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)). However, Plaintiff must allege facts suggesting effective alternatives existed to return the inmates to their cells. The mere allegation that reinforcement officers were not called does not in itself indicate the presence of additional officers was a valid alternative to the use of pepper spray, that these efforts had to be attempted before the use of pepper spray was authorized or that these alternative efforts would have resulted in the submission of the inmates with any less injury.

Plaintiff further alleges that Defendants subjected him to emotional injury by subjecting him to an increased possibility of victimization by other inmates—at least two of which, it was later discovered, carried inmate-manufactured weapons. While it is certainly possible that Defendants' actions in assembling forty-four inmates in a confined room may not have been the best method to conduct cell searches, Defendants' actions—contrary to Plaintiff's contentions about the rotunda's maximum capacity occupant load—did not seem to violate any specific regulations, <u>see, e.g.</u>, CDCR Operations Manual § 52090.12 (allowing for rooms with capacity of greater than 50 inmates, with no regulations regarding how many inmates may enter or exit a room at any one time), nor is there any indication their actions taken with malicious intent to harm the inmates. Moreover, there is no indication that anyone, inmate or staff member, suffered any injury due to the cramped conditions.

For the above reasons, Plaintiff has failed to state a cognizable Eighth Amendment claim against Defendants on the ground they inflicted cruel and unusual punishment.

### 2. Failure to Administer Adequate Medical Care

In order to bring a cause of action under the Eighth Amendment based upon inadequate medical care, the plaintiff must first allege that (1) he objectively has a "serious medical need"

7

and (2) that the defendant subjectively responded with "deliberate indifference" to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (quoting Estelle, 429 U.S. at 104); accord Jett v. Penner, 439 F.3d 1091, 1096 (2006); Clement, 298 F.3d at 904. Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

Once a prisoner establishes the existence of a serious medical need, he must then prove prison officials exhibited deliberate indifference in responding to that need. Farmer, 511 U.S. at 834; Jett, 439 F.3d at 1096. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Although the requirement is less stringent in regard to medical care, "because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns," Holliday v. Naku, 2009 U.S. Dist. LEXIS 55757, at *12 (E.D. Cal. June 26, 2009) (citing McGuckin, 974 F.2d at 1060), deliberate indifference is not met through a showing of medical malpractice and requires "more than mere negligence or isolated occurrences of neglect." Wood, 900 F.2d 1334; see also Toguchi, 391 F.3d at 1060; Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (mere medical malpractice insufficient to constitute Eighth Amendment violation); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Deliberate indifference may occur "when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett, 439 F.3d at 1096 (internal quotation marks and citations omitted). In order to establish deliberate indifference, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id.; McGuckin, 974 F.2d at 1060. In order for a prison official to be held liable, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." Farmer, 511 U.S. at 837. Where a defendant

should have been aware of the risk of substantial harm, but was not, "the person has not violated the Eighth Amendment, no matter how severe the risk." Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1188 (9th Cir. 2002) (emphasis omitted).

Here, Plaintiff did not include in his complaint a sufficient factual basis to establish that he suffered from a serious or chronic physical injury that a doctor would deem worthy of treatment. By the time Plaintiff was seen by a doctor approximately one month after he requested an appointment, Plaintiff's symptoms from any injuries sustained from the pepper spray had abated to the point where he no longer sought treatment for them and, at that time, he was examined instead for unrelated health issues. Plaintiff's failure to allege sufficient facts to establish a serious medical need preclude the necessity for further consideration by this Court. Additionally, the mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. *See* Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir.1985). A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d at 1060. "[T]he more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established "deliberate indifference on the part of the defendant." Id. at 1061.

Moreover, the Court is hard-pressed to find, based upon the facts alleged, that Defendants acted with deliberate indifference to his medical condition, serious or not. Plaintiff admits that immediately after the event, he was contacted by a nurse but he refused to indicate that he had any injury as a result of the incident. A week later he received treatment by Defendant Robaina. She asked him whether he wanted to see the doctor but he was not seen. When he returned to see Robaina on December 3, 2008, he complained that he had not seen a doctor. Robaina assured him that Rodriguez would schedule him on the next "doctor day' but he was not seen. A few days later, Plaintiff brought a sample of his sputum that Ropbaina refused to examine. Plaintiff alleges that it was Rodriguez's responsibility to schedule him to see the doctor. Thus, the fact that Robaina refused to examine his sputum—without a showing what valuable information she

1 could have gained from doing so—fails to state a claim against this defendant. This is especially
2 clear given Plaintiff's clear allegation that it was Rodriguez's obligation, rather than Robaina's, to
3 schedule the appointment.

4 Moreover, Plaintiff does not allege that Rodriguez failed to schedule only that he wasn't
5 seen by a doctor until December 17, 2008. While the inference is that Rodriguez failed to
6 schedule him to see the doctor, he does not allege that this is what occurred. In any event,
7 because Plaintiff has failed to demonstrate that he suffered from a serious medical condition or
8 that he suffered any harm from the delay in treatment, he has failed to state a cognizable Eighth
9 Amendment claim against Defendants for failure to administer adequate health care.

### C. Fourteenth Amendment Due Process Claim

Plaintiff claims a violation of his Fourteenth Amendment due process rights, in that his appeals were improperly barred. The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]" "[b]ut these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Allegations concerning improper denial of grievances are insufficient to demonstrate a constitutional violation. As previously stated, it is well-established in the Ninth Circuit that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez, 334 F.3d at 860 (citing Mann, 855 F.2d at 640). Therefore, when a prison official denies, screens-out, or ignores an inmate's grievance, the prison official does not deprive the inmate of any constitutional right. See, e.g., Wright, 2010 WL 445203, at *5 (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment); Walker, 2009 WL 5088788, at *6-7 (plaintiff's allegation that

1 prison officials failed to timely process his inmate appeals failed to state a cognizable claim);
2 Towner, 2009 WL 4281999, at *2 (plaintiff's allegation that prison officials screened-out his
3 inmate grievances without any basis failed to show a deprivation of federal rights). Accordingly,
4 allegations by Plaintiff against Defendant Tarnoff based on denial of grievances fail to state a
5 cognizable claim.

      **D.**    **State Law Claims**

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under § 1367(c) is discretionary." Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over [any] claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Plaintiff is therefore advised that "if [his] federal claims are dismissed before trial . . . [his] state claims [will] be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Even if supplemental jurisdiction can be established, however, Plaintiff must then establish that he has complied with local regulations in order to successfully bring a state law claim against these defendants. Tort claims against public entities and their employees are governed by the California Tort Claims Act, which states, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov't Code §§ 945.4, 945.6; Creighton v. City of Livingston, 628 F. Supp. 2d 1199, 1224-25 (E.D. Cal. 2009) (internal quotation marks and citations omitted). Under this Act, tort claims against public entities or employees must be presented within six months of the accrual of the cause of action. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-50.2. The purposes of this Act are to:

> (1) give the governmental entity an opportunity to settle just claims before suit is brought, (2) permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim; and (3) avoid multiple suits arising out of the same transaction or occurrence and thus further the goal of judicial economy.

Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1173 (E.D. Cal. 2005) (internal quotation marks and citations omitted).

"A plaintiff's supplemental state law claims against a California public agency are barred unless the plaintiff has complied with the requirements of the Tort Claims Act before commencing a civil action." Creighton, 628 F. Supp. 2d at 1224-25 (citing Mangold v. Cal. Pub. Util. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995)).  Plaintiff has not established that he has complied with the California Tort Claims Act; therefore, all state law claims must be dismissed.

## VI. Leave to Amend

The Court will grant Plaintiff an opportunity to amend the complaint **to address the above deficiencies.**  If Plaintiff chooses to amend his complaint, Fed. R. Civ. P. 8(a) requires that the amended complaint be brief but must describe the particular actions of each defendant that Plaintiff claims deprive him of his constitutional or federal rights.  Iqbal, 129 S.Ct. at 1948-49; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff is advised that he may not change the nature of this suit by adding new, unrelated claims to his amended complaint.  See George v. Smith, 507 F.3d 605, 607 (no "buckshot" complaints).  Factual allegations will be accepted as true, but "must be [sufficient] to raise a right to relief above the speculative level" and establish plausibility.  Twombly, 550 U.S. at 555-56 (2007) (citations omitted).  Plaintiff is also advised that mere conclusions unsupported by factual allegations are insufficient to state a claim.

Plaintiff is advised that an amended complaint supersedes any prior complaints.  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Pursuant to Local Rule 220, an amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Plaintiff is advised that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."  King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F2d 811, 814 (9th

Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

## VII.   Conclusion and Order

The Court must dismiss Plaintiff's complaint as to all Defendants because, for the reasons stated above, it fails to state a cognizable claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's complaint is DISMISSED WITH LEAVE TO AMEND; and
2. Plaintiff is GRANTED 21 days from the date of service of this order to file an amended complaint. The amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint."
3. **Failure to file comply with this order will result in a recommendation that this action be dismissed pursuant to Local Rule 110.**

IT IS SO ORDERED.

Dated:   **October 17, 2012**              **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE