1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11   DWAYNE L. BURGESS,                    ) Case No.: 1:11-cv-00921-LJO-JLT (PC)
                                           )
12              Plaintiff,                 ) **ORDER WITHDRAWING THE ORDER AND**
                                           ) **FINDINGS AND RECOMMENDATIONS**
13        v.                               ) **DATED AUGUST 14, 2013**
                                           ) (Doc. 28)
14   J. RAYA et al.,                       )
                                           )
15              Defendants.                ) **AMENDED ORDER FINDING SERVICE OF**
                                           ) **THE THIRD AMENDED COMPLAINT**
16                                         ) **APPROPRIATE AND DIRECTING THE**
                                           ) **CLERK OF THE COURT TO FORWARD**
17                                         ) **SERVICE DOCUMENTS TO THE PLAINTIFF**
                                           ) (Doc. 27)
18                                         )
                                           )
19                                         ) **FINDINGS AND RECOMMENDATION OF**
                                           ) **DISMISSAL OF CERTAIN CLAIMS**
20                                         ) (Doc. 27)
                                           )
21  _____)

22        Plaintiff Dwayne L. Burgess ("Plaintiff") is a state prisoner proceeding *pro se* with a civil

23   rights action pursuant to 42 U.S.C. § 1983. (Doc. 27).  Plaintiff filed his third amended complaint[1] on

24   July 15, 2013. Id.  As required by 28 U.S.C. § 1915A, the Court screens Plaintiff's third amended

25   complaint, and for the reasons set forth below, the Court deems service of certain claims appropriate.

26   _____

27        [1] Plaintiff filed a letter and lodged a "corrected second amended complaint" with the Court on July 12, 2013.
     (Docs. 24 and 25).  In the letter, Plaintiff requested that the Court permit him to withdraw his previously filed second
     amended complaint. (Doc. 24).  The Court granted Plaintiff's request and construed Plaintiff's "corrected second amended
28   complaint" as the third amended complaint. (Doc. 26).  Thus, the Court screens the third amended complaint. (Doc. 27).

                                              1

1  The Court also recommends that certain claims be **DISMISSED.**

2  **I.      SCREENING REQUIREMENT**

3          Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a case in which the plaintiff proceeds

4  in forma pauperis if the court determines that the case "fails to state a claim on which relief may be

5  granted" or is "frivolous."   A claim is frivolous "when the facts alleged rise to the level of the

6  irrational or the wholly incredible, whether or not there are judicially noticeable facts available to

7  contradict them." Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

8  **II.     PLEADING STANDARDS**

9          **A.  Federal Rule of Civil Procedure 8(a)**

10         "Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards

11  than  formal  pleadings  drafted  by  lawyers.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting

12  Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  "[They] can only be dismissed for failure to state a

13  claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim

14  which would entitle him to relief.'" Id.  Under Federal Rule of Civil Procedure 8(a), "[a] pleading that

15  states a claim for relief must contain: (1) a short and plaint statement of the grounds for the court's

16  jurisdiction, . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to

17  relief; and (3) a demand for the relief sought." Fed. R. Civ. P. 8(a).  Each allegation must be simple,

18  concise, and direct. Fed. R. Civ. P. 8(d)(1).   While a complaint "does not need detailed factual

19  allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more

20  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

21  do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations

22  omitted).

23         In analyzing a pleading, the Court sets conclusory factual allegations aside, accepts all non-

24  conclusory  factual  allegations  as  true,  and  determines  whether  those  non-conclusory  factual

25  allegations accepted as true state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556

26  U.S. 662, 676-684 (2009).  "The plausibility standard is not akin to a probability requirement, but it

27  asks for more than a sheer possibility that a defendant has acted unlawfully."  (Id. at 678) (internal

28

1  quotation marks and citation omitted).  In determining plausibility, the Court is permitted "to draw on
2  its judicial experience and common sense." Id. at 679.

3  **B.   42 U.S.C. § 1983**

4  In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he
5  suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that
6  the violation was proximately caused by a person acting under color of state law. See Crumpton v.
7  Gates, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a
8  plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act,
9  or omitted to perform an act which he was legally required to do that caused the deprivation
10 complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (*quoting* Johnson v. Duffy, 588
11 F.2d 740, 743-44 (9th Cir. 1978)).

12 **III.   COMPLAINT**

13 At all times relevant to his complaint, Plaintiff was incarcerated at Kern Valley State Prison
14 ("KVSP").[2] *See* (Doc. 27).  Plaintiff sues the following KVSP personnel in their individual capacity:
15 (1) Officer Raya, (2) Officer Garcia, (3) Officer Fernandez, (4) Officer Polanco, (5) Lieutenant ("Lt.")
16 Morales, (6) Robiana, (7) E. Rodriguez, and (8) Counselor Tarnoff are sued in their individual
17 capacities. Id. at 2 ¶¶ 6-9.  Plaintiff states his third amended complaint as follows:

18 On October 27, 2008, KVSP personnel locked Plaintiff and approximately 43 other inmates in
19 a small rotunda in a passage way between their cells and the dining hall while Raya and Garcia
20 searched their cells. (Doc. 27 at 3 ¶¶ 10, 11).  The group contained Southern Hispanic and African
21 American inmates, who had a history of violence against each other. Id. at 3 ¶ 12.  Consequently,
22 Plaintiff requested that Officer Polanco, the control booth officer, inform Officers Raya and Garcia
23 that the inmates needed to be released from the rotunda so they could return to their cells. Id.  Polanco
24 retorted that the group should "stop acting like a bunch of babies." Id. at 3-4 at ¶ 13.

25 Upon Officer Raya and Garcia's return to the rotunda, numerous inmates requested to speak
26 with a sergeant. (Doc. 27 at 4 ¶ 15).  Plaintiff requested that these officers provide him with a CDCR

27
28 [2]Plaintiff does not state the exact location of his incarceration at the time of the inciting incident.  However, given the Defendants' place of employment, it is presumed the incident occurred at KVSP.

1    Form 602 (an inmate grievance form) to enable him to complain about the rotunda situation. Id. at 4 ¶

2    16.  Raya angrily responded, "[Y]eah[,] we got something for you paper-pushing mother-(expletive) –

3    and for the rest of you mother-(expletive)'s that wanna cry to the (expletive) sergeant too!" Id. at 4 ¶

4    17.

5          A few minutes later, Defendant Polanco opened the rotunda door and permitted Officers Cruz

6    and Gomez to walk through the rotunda. (Doc. 27 at 4 ¶ 19).  Their walk through the rotunda occurred

7    without incident. Id.  Officers Cruz and Gomez then joined Officers Raya and Garcia who were

8    standing in the "C-Section" doorway. Id.  The four officers briefly spoke in hushed tones with Polanco

9    and Fernandez who were in the control booth. Id. at 5 ¶ 20.  Cruz and Gomez returned through the

10   rotunda without any problems from the inmates. Id. at 5 ¶ 21.

11         Without any warning, Defendant Polanco then threw a "grenade canister of O.C. T-16 pepper-

12   spray" into the rotunda. (Doc. 27 at 5 ¶ 21).  He simultaneously shouted "mother-(expletive)'s get

13   down!" Id. at 5 ¶ 21.  The rotunda filled with the pepper spray where Defendants forced the inmates to

14   remain for 12-15 minutes. Id. at 5 ¶¶ 21, 22.  Meanwhile, Plaintiff pled with Defendants Raya, Garcia,

15   Fernandez and Polanco to remove him from the rotunda because "he was asthmatic and …choking to

16   death." Id. at 5 ¶ 23.  Later that day, Plaintiff told KVSP medical staff that he had "no comment" with

17   regard to his medical condition because he feared retaliation from the Defendants. Id. at 6 ¶ 26.

18         Plaintiff began coughing-up mucus and blood within three days of the October 27 incident.

19   (Doc. 27 at 6 ¶ 27).  Plaintiff requested medical care on November 3, 2008, but did not receive

20   assistance until November 13, 2008. Id. at 6 ¶ 28.  Plaintiff informed Defendant Robiana at the

21   meeting that his lungs burned, that he was short of breath and that he had asthma and bronchitis. Id. at

22   6 ¶ 28.  Defendant Robiana, apparently a nurse or medical assistant at KVSP, provided Plaintiff with

23   "Mucinex" and advised him to seek a doctor's appointment if he desired a more thorough

24   examination. Id. at 6 ¶ 29.

25         Plaintiff received a CDC Form 115 Rules Violation Report for the October 27, 2013, incident,

26   which Defendant Morales adjudicated on November 13, 2013. (Doc. 27 at 9 ¶ 40).  Defendant Morales

27   denied Plaintiff's request for witnesses and refused to ask Defendant Raya certain questions. Id. at 9 ¶

28   41.  Defendant Morales found Plaintiff guilty, resulting in a loss of "90-days of both goodtime credits

1  and privileges." Id. at 10 ¶ 43.

2        On December 3, 2008, Defendant Robiana explained to Plaintiff that Defendant Rodriguez,

3  who was responsible for scheduling doctor appointments, failed to schedule a doctor appointment for

4  him. (Doc. 27. at 7 ¶ 31).  Defendant Robiana indicated that Defendant Robiana would schedule an

5  appointment for Plaintiff on December 8, 2008. Id.  No appointment occurred on December 8, 2008.

6  Id. at 31.

7        By December 11, 2008, Plaintiff continued to cough-up a blood and mucous phlegm mixture.

8  (Doc. 27 at 7 ¶ 32).  On that day he coughed into a plastic bag which he carried to Defendant Robiana

9  in the medical clinic. Id.  His intent was to advise her of the seriousness of his situation. Id.  Defendant

10  Robiana refused to examine the plastic bag because "it might make [her] throw up[.]" Id. at 8 ¶ 33.

11  Plaintiff's coughing subsided a few days later on its own. Id. at 8 ¶ 34.

12        On December 17, 2008, Dr. Dileo examined Plaintiff for an unrelated medical issue. (Doc. 27

13  at 8 ¶ 35.  Plaintiff explained his prior symptoms to Dr. Dileo. Id. at 8 ¶ 36.  Dr. Dielo then opined that

14  the pepper spray "can mess you up bad, and permanently – especially if you're asthmatic." Id.

15        On February 23 and February 25, 2009, Officers Raya and Garcia again locked Plaintiff and

16  several other inmates in the rotunda to search their cells. (Doc. 27 at 10 ¶ 46).  Plaintiff again indicated

17  that he would file a CDCR Form 602 inmate grievance against them. Id. at 10 ¶ 46.  Defendants

18  responded that "that (expletive) don't work, we run this mother-(expletive). That 602 will never make

19  it past screening. Now take yo (sic) ass to your cell before you get written up again!" Id. at 10 ¶ 46.

20  **IV.    DISCUSSION AND ANALYSIS**

21        **A.  Claims I and II - California Tort Claims of Assault and Battery**

22        Plaintiff must comply with the California Tort Claims Act ("CTCA") in order to maintain his

23  California tort claims of assault and battery against Raya, Garcia, Polanco, and Fernandez.  Under the

24  CTCA, a plaintiff may not maintain an action for damages against a public employee unless he has

25  presented a written claim to the state Victim Compensation and Government Claims Board within six

26  months of accrual of the action.  See Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; Mangold v.

27  California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).  In pleading a state tort claim,

28  plaintiff must allege facts demonstrating that he has complied with CTCA's presentation requirement.

1    State of California v. Superior Court (Bodde), 32 Cal.4th 1234, 1243-44 (2004).  Failure to allege

2    compliance constitutes a failure to state a cause of action and will result in the dismissal of plaintiff's

3    state law claims.  Id.  Plaintiff avers that he filed a claim with the State Board of Control, which the

4    Board denied. (Doc. 27 at 12 ¶ 60).  At this early juncture, Plaintiff seemingly complied with the

5    CTCA.

6                        **1.**   Claim I - Plaintiff states a cognizable claim of battery.

7        A California civil battery occurs when: "(1) [a] defendant intentionally performed an act that

8    resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent

9    to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the]

10   plaintiff." Brown v. Ransweiler, 89 Cal.Rptr.3d 801, 811 (2009).  This claim is analogous to an Eighth

11   Amendment claim of the excessive use of force, and requires the Plaintiff to demonstrate that the use

12   of force was unreasonable. Brown, at 89 Cal.Rptr.3d at 811.

13           Plaintiff presents sufficient facts to support his civil battery claim against Polanco.  The

14   deployment of pepper spray in an enclosed rotunda and Polanco's simultaneous statement of "mother-

15   (expletive)'s get down!" demonstrates Polanco's intent for the pepper spray to harm the persons in the

16   rotunda.  The nature of the pepper spray and Plaintiff's pleading to be removed from the rotunda

17   indicates that the touching was offensive.  Finally, Plaintiff amply avers that he sustained injury from

18   the pepper spray.

19           While neither Raya, Garcia, nor Fernandez launched the pepper spray "grenade," these

20   Defendants permitted Plaintiff to remain in the rotunda for 12-15 minutes after Polanco used the

21   pepper spray. (Doc. 27 at 5 ¶ 23).  Plaintiff avers that he pleaded with these Defendants to get him out

22   of the rotunda because he suffered from asthma and "was choking to death," but Raya, Garcia,

23   Polanco, and Fernandez refused to assist him. (Doc. 27 at 5 ¶ 23).  The refusal to remove Plaintiff

24   from the rotunda filled with pepper spray constitutes an intentional act that resulted in harm to the

25   Plaintiff.  Finally, the third amended complaint makes no mention of a reasonable threat to either

26   Plaintiff or the Defendants.  Thus, Plaintiff states a cognizable California tort claim for battery against

27   Raya, Garcia, Polanco, and Fernandez.

28                        **2.**   Claim II – Plaintiff has not stated a cognizable claim of assault.

6

1    In order to maintain a tort action of assault under California law, a party must demonstrate: (1)

2    that the defendant intended or threatened to cause offensive contact (2) that the plaintiff believed

3    himself to be in imminent danger, (3) that the contact occurred against Plaintiff's will, (4) that the

4    conduct caused harm, and (5) that the defendant's conduct substantial caused the harm. Yun Hee So v.

5    Sook Ja Shin, 151 Cal.Rptr.3d 257, 269 (2013).  However, mere words or threats, uncoupled with

6    corresponding actions, are insufficient to constitute an act intending to cause injury. Plotnik v.

7    Meihaus, 146 Cal.Rptr.3d 585, 598 (2012) (Two brothers' threats to kill neighbor without displaying

8    any weapons or attempting to touch the neighbor did not constituted acts that were intended to cause

9    an injury).

10    Plaintiff fails to indicate that he believed himself to be imminent danger.  While Polanco threw

11    the grenade canister into the rotunda, Plaintiff admits that this occurred without any warning. (Doc. 27

12    at 5 ¶ 21).  Similarly, Plaintiff allegedly feared the escalation of racial tensions between the Southern

13    Hispanic and African American inmates while confined in the rotunda.  However, his fear regarding

14    any immediate threat was speculative at best.  Thus, Plaintiff fails to state a cognizable California

15    claim of civil assault.  Therefore, the Court **RECOMMENDS** that this claim be **DISMISSED.**

16    **B.  Claim III - Eighth Amendment Excessive Use of Force**

17    When prison officials use excessive force against prisoners, they violate the inmates' Eighth

18    Amendment right to be free from cruel and unusual punishment." Clement v. Gomez, 298 F.3d 898,

19    903 (9th Cir. 2002).  In determining whether a prison official has used excessive force, "the core

20    judicial inquiry . . . is whether force was applied in a good-faith effort to maintain or restore discipline,

21    or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Factors

22    the court may consider in making this determination include: (1) the extent of the injury; (2) the need

23    for force; (3) the relationship between the need and the amount of force used; (4) the threat as

24    reasonably perceived by prison officials; and (5) any efforts made by prison officials to temper the

25    severity of a forceful response. Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

26    Plaintiff states a cognizable claim for the excessive use of force against Raya, Garcia, Polanco,

27    and Fernandez.  Plaintiff pleads the absence of any reasonable threat on October 27, 2008.

28    Specifically, he notes that prison personnel "intentionally locked" inmates in the rotunda, but Cruz and

7

1   Gomez were able to pass through the group of inmates without incident on two occasions. (Doc. 27 at

2   7 ¶¶ 10, 19-20).  Defendant Polanco then allegedly launched a pepper spray "grenade" into the rotunda

3   without any warning or provocation. Id. at 5 ¶ 21.

4       With regard to Defendants Raya, Garcia and Fernandez, as noted above, Plaintiff made them

5   aware of how pepper spray affected on him. Id. at 5 ¶ 23.  Despite the lack of any threat to the

6   Defendants or the inmates, Defendants refused to remove Plaintiff from the rotunda for 12 to 15

7   minutes while he was exposed to the pepper spray. Id.  Such a prolonged and exposure to pepper spray

8   upon a compliant inmate, constitutes the excessive use of force.  Thus, Plaintiff states a cognizable

9   claim of against Defendants Raya, Garcia, Polanco, and Fernandez for the excessive use of force.

10          **C.  Claim IV – First Amendment Retaliation**

11      Under the First Amendment, prison officials may not retaliate against prisoners for initiating

12  litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).

13  A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state

14  actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and

15  that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not

16  reasonably advance a legitimate penological purpose. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.

17  2009) (quoting Rhodes, 408 F.3d at 567-68).  A "plaintiff must plead facts which suggest that

18  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the

19  defendant's conduct." Harpool v. Beyer, Case No. 2:10-CV-1253 MCE GGH, 2012 WL 4038444 * 11

20  (E.D. Cal. 2012)(*referring to* Soranno's Gasco, Inc., v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

21      Plaintiff alleges that Raya, Garcia, Polanco and Fernandez retaliated against him for seeking to

22  file a CDCR Form 602 or inmate grievance.[3]  In response to his request, Raya allegedly responded,

23  "[Y]eah[,] we got something for you paper-pushing mother-(expletive) – and for the rest of you

24  mother-(expletive)'s that wanna cry to the (expletive) sergeant too!" (Doc. 27 at 4 ¶ 17).  Shortly

25

26      [3] The Court notes the discrepancies between Plaintiff's first amended complaint and his third amended complaint.
    Previously, Plaintiff averred that Defendant Polanco used teargas in retaliation of Plaintiff's exercise of his appellate right
27  to speak to a sergeant concerning his confinement to the rotunda. (Doc. 11 at 4 ¶ 7).  He now avers that Defendants used
    pepper spray against him because he requested a CDCR Form 602 to file his administrative grievance.  Nonetheless, the
28  Court must liberally construe Plaintiff's third amended complaint and finds that he now states a cognizable claim

1  thereafter, Polanco launched the pepper spray grenade into the rotunda. Id. at 5 ¶ 21.  When Plaintiff

2  requested removal from the rotunda, Raya refused by stating that Plaintiff "should have "though about

3  all that before whining for a 602." Id. at 5 ¶ 23 (quotations in original).  The sequence of events

4  coupled with Raya's comments indicates that Polanco launched the pepper spray "grenade" because

5  Plaintiff sought to exercise a First Amendment right.  Thus, Plaintiff presents sufficient facts to

6  suggest that Plaintiff's request to file an inmate grievance was a motivating factor behind Polanco's

7  and Raya's conduct.  Thus, Plaintiff may process on his cognizable claim of retaliation against

8  Polanco and Raya.

9        With regard to Fernandez and Garcia, Plaintiff omits any facts to suggest a retaliatory motive.

10  Plaintiff indicates that Garcia and Raya searched the cells together and later "conversed in hushed

11  tones for approximately 3-4 minutes." (Doc. 27 at 4 ¶ 19).  Raya and Garcia allegedly spoke inaudibly

12  to Polanco and Fernandez during this same period. Id. at 4-5 ¶ 19.  Plaintiff fails to provide any further

13  facts concerning Fernandez and Garcia.  As such, the Court cannot presume Garcia's and Fernandez's

14  retaliatory intent by the mere fact of their proximity to Raya and Polanco.  Therefore, the Court

15  **RECOMMENDS** that Plaintiff's retaliation claim against Garcia and Fernandez be **DISMISSED.**

16        **D.  Claims V and VI – Eighth Amendment Inadequate Medical Care**

17        Plaintiff presents a multifaceted Eighth Amendment claim of inadequate medical care.  To

18  establish a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must

19  demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

20  medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  In other words, the plaintiff must show

21  the existence of (1) a serious medical need and (2) a deliberately indifferent response by the defendant.

22  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

23        A medical need is serious "if the failure to treat the condition could result in further significant

24  injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059

25  (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir.

26  1997).  Indications that a person has a serious need for medical treatment include: the existence of an

27  injury that a reasonable doctor or patient would find worthy of comment or treatment; the presence of

28  a medical condition that significantly affects an individual's daily activities; or the existence of

1    chronic and substantial pain.  McGuckin, 974 F.2d at 1059-60 (citations omitted).

2          A defendant acts with deliberate indifference when he knowingly fails to respond to a serious

3    medical need, thereby inflicting harm on the plaintiff.  See Farmer v. Brennan, 511 U.S. 825, 837-42

4    (1994); Jett, 439 F.3d at 1096.  Deliberate indifference may appear when a defendant denies, delays,

5    or otherwise interferes with medical treatment.  See Hutchinson v. United States, 838 F.2d 390, 394

6    (9th Cir. 1988).  Nevertheless, "[d]eliberate indifference is a high legal standard."  Toguchi v. Chung,

7    391 F.3d 1051, 1060 (9th Cir. 2004).  "Mere 'indifference,' 'negligence,' or 'medical malpractice' will

8    not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)

9    (citing Estelle, 429 U.S. at 105-06).

10         With regard to his medical condition, Plaintiff avers that he had currently suffered from asthma

11   and bronchitis. (Doc. 27 at 14 ¶ 70).  Severe respiratory problems, such as the asthma and bronchitis,

12   could affect one's daily activities. Id.  Thus, Plaintiff indicates the presence of a serious medical

13   condition.  Therefore, the Court must determine whether Plaintiff any of the Defendants acted with

14   deliberate indifference.

15                    i.       Claim V

16         With regard to Claim V, Plaintiff avers that Raya, Garcia, Polanco, and Fernandez used pepper

17   spray against him when Plaintiff possessed a "pre-condition of asthma and bronchitis" in violation of

18   the Eighth Amendment. (Doc. 27 at 14 ¶ 70).  Plaintiff complains that prison personnel failed to

19   inquire as to whether he possessed any "pre-existing medical problems that could become

20   exacerbated" by pepper spray. Id. at 5 ¶ 22.  However, the use of pepper spray is not a *per se* violation

21   of the Eighth Amendment. *See e.g.*, Allen v. Bosley, 253 F. App'x 658, 659 (9th Cir. 2007) (A

22   plaintiff failed to state a claim for deliberate indifference when prison personnel followed proper

23   protocol for the use of pepper spray and there was no evidence of actual injury).  Contrary to

24   Plaintiff's position, the U.S. Constitution does not require prison personnel to seek an inmate's

25   permission or verify whether the inmate has any medical peculiarities which make him particularly

26   susceptible to its effects, before using the spray.

27         Furthermore, there existed no demonstrative delay in medical care.  Plaintiff indicates that he

28   was seen by prison medical staff later on the evening of October 27, 2008. (Doc. 27 at 5-6 ¶ 25).

10

1    Plaintiff said that he had no "no comment" when asked how the pepper spray medically affected him.

2    Id.  While Plaintiff feared that Raya, Garcia, Polanco, and Fernandez might retaliate against him for

3    his response to medical personnel, Plaintiff fails to provide any facts to support this belief.  Thus, any

4    delay in medical care would be attributable to Plaintiff and not to Raya, Garcia, Polanco, and

5    Fernandez.  Therefore, the Court **RECOMMENDS** that Claim V be **DISMISSED**.

6                    ii.      Claim VI

7            Plaintiff avers that Robiana and Rodriguez "fail[ed] to get Plaintiff immediate doctor's care"

8    in Claim VI. (Doc. 27 at 14 ¶ 72).  Plaintiff told Robiana on November 13, 2008, that he currently

9    suffered from asthma and bronchitis, and that he presently experienced "burning in his chest/lungs."

10   (Doc. 27 at 6 ¶ 28).  Robiana provided him "Mucinex" and indicated that she would make a notation

11   in Plaintiff's medical file so a doctor could examine him. Id. at 6 ¶ 29.  Rodriguez, who was

12   responsible for scheduling doctor appointments, seemingly never scheduled an appointment for the

13   Plaintiff. Id. at 7 ¶¶ 31-32.  On December 3, 2008, Robiana indicated that she would "see to it that

14   Plaintiff was placed on a list" for a December 8 doctor's appointment. Id. at 7 ¶ 31.  Though the

15   December 8 appointment never occurred, Plaintiff's symptoms subsided shortly thereafter. Id. at 7-8

16   ¶¶ 31, 34.

17          Notably, nowhere does Plaintiff aver that Robiana failed to place a note in his medical file

18   regarding Plaintiff's request to attend a doctor's appointment.  Plaintiff seemingly wishes the Court to

19   attribute the absence of a December 8, 2008 doctor's appointment to Robiana's failure to personally

20   schedule a doctor appointment; this the Court will not do.  Assuming that Robiana actually failed to

21   schedule the appointment, such an allegation demonstrates negligence at best.

22          Similarly, Plaintiff blames Rodriguez for the failure to schedule a doctor's appointment after

23   his November 13, 2008 appointment.  Plaintiff omits any factual support to indicate that Rodriguez

24   was aware of Plaintiff's medical condition.  Like Robiana, the failure to schedule a single doctor's

25   appointment demonstrates professional negligence at best.

26          Finally, Plaintiff's failure to demonstrate any injury caused by the alleged delay in scheduling

27   a doctor's appointment is determinative of the Court's finding.  Nowhere does Plaintiff mention that

28   his symptoms of coughing-up blood were medical indications of asthma, bronchitis, or some other

                                                      11

1   serious medical condition.  Notably, his symptoms subsided without treatment shortly after December

2   11, 2008, without any further medical attention. (Doc. 27 at 8 ¶ 34).  Thus, the Court finds that

3   Plaintiff fails to state a cognizable Eighth Amendment claim of inadequate medical care.  Therefore,

4   the Court **RECOMMENDS** that Claim VI be **DISMISSED.**

5   **E.  Claim VII – Fourteenth Amendment Due Process Violation.**

6   Plaintiff's due process claim against Defendant Morales appears to be barred by Heck v.

7   Humphrey, 512 U.S. 477 (1994) and its progeny.  In Heck, the United States Supreme Court held that

8   a suit for damages on a § 1983 claim concerning unconstitutional imprisonment cannot be maintained

9   unless the plaintiff can prove "that the conviction or sentence has been reversed on direct appeal,

10  expunged by executive order, declared invalid by a state tribunal authorized to make such

11  determination, or called into question by a federal court's issuance of a writ of habeas corpus."  512

12  U.S. at 486-87.  This rule, also known as the favorable termination rule, has been extended to prison

13  disciplinary proceedings where good time credits have been forfeited.  See Edwards v. Balisok, 520

14  U.S. 641, 644-48 (1997).  Therefore, a prisoner's § 1983 action challenging a disciplinary hearing "is

15  barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter

16  the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if

17  success in that action would necessarily demonstrate the invalidity of confinement or its duration."

18  Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

19  Plaintiff challenges a disciplinary hearing which resulted in a loss of "90-days of both

20  goodtime credits and privileges." (Doc. 27 at 10 ¶ 43).  If Plaintiff is successful in proving his claim,

21  namely that the November 13, 2008 disciplinary hearing was constitutionally insufficient because

22  Defendant Morales denied him his right to call witnesses, (Doc. 27 at 9 ¶¶ 41-42), his success would

23  imply the invalidity of the finding that he was guilty of the charged discipline and likewise, would

24  imply the invalidity of the duration of his confinement.  Plaintiff, however, has not demonstrated that

25  his credits have been restored or that his disciplinary conviction has been set aside or overturned.

26  Accordingly, Plaintiff's due process claim against Defendant Morales is barred. *See* Cervantes v. Pratt,

27  224 Fed. Appx. 697, 700 (9th Cir. 2007) (the asserted procedural defect of excluding evidence at a

28  disciplinary hearing necessarily implies the invalidity of the revocation of early release credits; the

1    claim is therefore barred by <u>Heck</u>).[4]  Thus, Plaintiff fails to state a cognizable claim of procedural due

2    process claim under the Fourteenth Amendment.  Therefore, the Court **RECOMMENDS** that Claim

3    VII against Defendant Morales be **DISMISSED**.

4              **F.  Claim VIII - No Right to a Particular Administrative Grievance**

5              Plaintiff avers that Defendant Tarnoff, apparently KVSP's Appeals Coordinator, "obstructed

6    and/or frustrated" the processing of Plaintiff's inmate grievances. (Doc. 27 at 11-13 ¶¶ 47-60).  To the

7    extent that Plaintiff alleges that prison officials ignored his inmate grievances, he is advised that it is

8    well-established that "inmates lack a separate constitutional entitlement to a specific prison grievance

9    procedure." <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (citing <u>Mann v. Adams</u>, 855 F.2d

10   639, 640 (9th Cir. 1988)).   When a prison official denies, screens-out, or ignores an inmate's

11   grievance, the prison official does not deprive the inmate of any constitutional right.  <u>See</u>, <u>e.g.</u>, <u>Wright

12   v. Shannon</u>, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010)

13   (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed to state a

14   cognizable claim); <u>Walker v. Vazquez</u>, No. CIV F-09-0931 YNP PC, 2009 WL 5088788, at *6-7

15   (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process his inmate

16   appeals failed to state a cognizable claim); <u>Towner v. Knowles</u>, No. CIV S-08-2833 LKK EFB P,

17   2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials

18   screened-out his inmate grievances without any basis failed to show a deprivation of federal rights).

19   Given that Plaintiff bases his sole grievance against Defendant Tarnoff on Defendant Tarnoff's

20   processing of his inmate grievance, Plaintiff fails to state any cognizable claim against Defendant

21   Tarnoff.  Therefore, the Court **RECOMMENDS** that Claim IX be **DISMISSED.**

22             **G.  Claim IX - 42 U.S.C. § 1983 Conspiracy**

23             In the context of conspiracy claims brought pursuant to section 1983, a plaintiff must "allege

24   [some] facts to support the existence of a conspiracy among the defendants."  <u>Buckey v. County of

25   Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839

26   F.2d 621, 626 (9th Cir. 1988).  To state such a claim, a plaintiff must show (1) a meeting of the

27

28              [4] Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

                                                    13

defendants' minds to violate the plaintiff's constitutional rights, and (2) an actual deprivation of the plaintiff's constitutional rights." <u>Fearence v. Schulteis</u>, Case No. 1:08-CV-00615-LJO, 2013 WL 1314038 * 3 (E.D. Cal. 2013).   Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.   <u>Sykes v. State of California</u>, 497 F.2d 197, 200 (9th Cir. 1974).   Each defendant is not required to know the exact details of the course of action, "but each participant must at least share the common objective of the conspiracy."   <u>Fearance</u>, 2013 WL at 3 (internal citations and quotations omitted).   "Mere passive acquiescence in the direction of state officials generally is not sufficient."   <u>Taylor v. List</u>, 880 F.2d 1040, 1048 (9th Cir. 1989).

Plaintiff generally avers that "the conduct of all Defendants as alleged herein were committed with wrongful and retaliatory intent to injure, degrade, humiliate, and punish Plaintiff for the exercise of [his] legal rights." (Doc. 27 at 12 ¶ 55).   However, taking the allegations as true, the Court finds only sufficient inference from the allegations that Plaintiff has stated a claim against Polanco and Raya for conspiracy.   As indicated above, Raya informed Plaintiff that he would regret requesting an inmate grievance form.   Immediately thereafter, Polanco threw a pepper spray grenade into the rotunda. Thus, both Defendants actively participated in retaliating against Plaintiff for the alleged exercise of this First Amendment right.   Plaintiff may proceed on Claim IX against Polanco and Raya <u>only</u>.

While the Court finds that Plaintiff states a cognizable claim against Fernandez and Garcia for their refusal to remove Plaintiff from the pepper spray filled rotunda, their actions appear to be mere acquiescence to Polanco's and Raya's retaliatory purpose.   Similarly, Morales purportedly acted alone when depriving Plaintiff of his right to a fair disciplinary hearing, as the factual allegations fail to suggest otherwise.   Finally, as noted above, Robiana, Tarnoff, and Rodriguez committed no underlying constitutional violation against Plaintiff and thus could not have conspired against Plaintiff in any fashion.   Thus, Plaintiff fails to state a cognizable claim for conspiracy against these Defendants. Therefore, the Court recommends that Claim IX be **DISMISSED** as to Fernandez, Garcia, Morales, Robiana, Rodriguez, and Tarnoff**.**

**V.      LEAVE TO AMEND WOULD BE FUTILE**

The Court provided Plaintiff with multiple opportunities to state his complaint.   Furthermore,

14

1  the Court has gone to great lengths to advise Plaintiff of the legal standards necessary for him to

2  present a cognizable claim.  However, Plaintiff has failed to state cognizable claims with regard to

3  certain claims.  Thus, the Court finds that against granting leave to amend would be futile.

4  **ORDER**

5       Accordingly, it is **HEREBY ORDERED** that:

6       1.     The Order and Findings and Recommendations, dated August 14, 2013 (Doc. 28) are

7  hereby **VACATED;**

8       2.     Service of the third amended complaint is appropriate for the following claims:

9            a.     Claim I – California civil battery claim against Defendants Raya, Garcia,

10            Polanco, and Fernandez;

11            b.     Claim III – Eighth Amendment excessive use of force against Defendants Raya,

12            Garcia, Polanco, and Fernandez;

13            c.     Claim IV – First Amendment retaliation against Defendants Raya and Polanco;

14            and

15            d.     Claim IX – conspiracy against Defendants Polanco and Raya.

16       3.     The Clerk of the Court shall send Plaintiff four USM-285 forms, four summonses, a

17  "Notice of Submission of Documents" form, an instruction sheet, and a copy of the third amended

18  complaint (Doc. 27).

19       4. Within **thirty (30) days** from the date of this order, Plaintiff shall complete the attached

20  "Notice of Submission of Documents" form and submit the completed form to the Court with the

21  following documents:

22       a. One completed summons form for <u>each</u> of the defendants listed above;

23       b. A completed USM-285 form for <u>each</u> of the defendants listed above; and

24       c. Five copies of the endorsed third amended complaint (Doc. 27).

25       5. Plaintiff need not attempt service on the defendants and need not request waiver of service.

26  Upon receipt of the above-described documents, the Court will direct the United States Marshal to

27  serve the above-named defendant pursuant to Federal Rule of Civil Procedure 4 without payment of

28  costs; and

6. **Plaintiff is cautioned that failure to comply with this order will result a recommendation of the dismissal of this case.**

**FINDINGS AND RECOMMENDATIONS**

Accordingly, the Court **HEREBY RECOMMENDS** as follows:

1. That Claim II – California assault against Defendants Raya, Garcia, Polanco, and Fernandez be **DISMISSED without leave to amend;**

2. That Claim IV – First Amendment retaliation against Defendants Garcia and Fernandez be **DISMISSED without leave to amend**;

3. That Claims V and VI – Eighth Amendment failure to provide adequate medical care against Defendants Raya, Garcia, Polanco, Fernandez, Robiana, and Rodriguez be **DISMISSED without leave to amend;**

4. That Claim VII – Fourteenth Amendment due process claim against Defendant Morales;

5. That Claim VIII – interference with Plaintiff's administrative grievance claim against Defendant Tarnoff be **DISMISSED without leave to amend**; and

6. That Claim IX – conspiracy against Defendants Fernandez, Garcia, Morales, Robiana, Rodriguez and Tarnoff be **DISMISSED without leave to amend.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within **14 days after being served with these findings and recommendations**, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.

///

///

///

///

///

1    The parties are advised that failure to file objections within the specified time may waive the

2  right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3

4  IT IS SO ORDERED.

5    Dated:    **August 15, 2013**                    **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28